UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
N.K., individually and on behalf of J.D., a child
with disability,

                    Plaintiffs,                          15-cv-1468 (PKC)

        -against-                                        MEMORANDUM
                                                         AND ORDER

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                    Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        N.K. (the "Parent") brings this action individually and on behalf of her son, J.D.

(the "Student"), against the New York City Department of Education (the "Department") under

the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA").

        The Parent contends that the Department denied the Student a free appropriate

public education ("FAPE") for the 2012-2013 school year.  The Parent proceeded to a hearing

and the Impartial Hearing Officer ("IHO") decided in her favor.  The Department appealed to the

State Review Officer ("SRO"), who reversed the IHO's ruling, concluding that, in the context of

this Parent's complaint, the Department had no burden to prove that the particular school in

which the Department proposed to place the Student would be unable to implement the

individualized education program ("IEP").

        Both sides have moved for summary judgment pursuant to Rule 56, Fed. R. Civ.

P.  (Dkt. No. 16, 19.)  For the reasons set forth below, the Department's cross-motion for

summary judgment (Dkt. No. 19) is GRANTED, and the Parent's motion for summary judgment

(Dkt. 16) is DENIED.

THE IDEA ADMINISTRATIVE PROCESS

The IDEA requires states that receive federal funding for education to provide students with disabilities a FAPE.  20 U.S.C. § 1412(a)(1)(A).  The services that a school must provide to ensure that a student receives a FAPE are determined by the student's IEP, "a written statement that sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives."  R.E. v. New York City Dep't of Educ., 694 F.3d 167, 175 (2d Cir. 2012) (internal quotations omitted).  "The IDEA requires that an IEP be 'reasonably calculated to enable the child to receive educational benefits.'"  Id. (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982)).  In New York, the IEP is developed by a committee on special education ("CSE") that is comprised of parents, teachers, and state representatives.

The IDEA also requires that states provide parents with an opportunity to object "to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6)(A).  To provide parents this opportunity to object, New York has established a two-tier system of administrative review.  In the first instance, parents who wish to challenge a student's IEP or placement must file a complaint setting forth the basis for the challenge and requesting an impartial hearing before an IHO.  N.Y. Educ. L. § 4404(1); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i)(1)(IV).  Following the hearing and determination by the IHO, either party may appeal the decision to a SRO.  N.Y. Educ. L. § 4404(2).  If either party is unsatisfied with the SRO's decision, they may bring a civil action challenging the SRO's decision in federal or state court. 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. L. § 4404(3).

BACKGROUND

The Student was born in 2003 and is classified as having a "speech and language impairment." (Tr. 14-15.)[1] Although described as a social person, the Student has difficulty with social problem solving, as well as "receptive, expressive, and pragmatic speech deficits." (IHO Decision, at 3.) A 2009 psychiatric evaluation of the Student by Dr. Frederick Zuckerman described the Student as having "an expressive language disorder, with no other psychiatric diagnosis." (Id.) The Student has attended the Cooke Center ("Cooke"), a private school, since the middle of kindergarten, and the 2012-2013 school year was his fifth year at the school.

On March 22, 2012, the CSE convened to develop an IEP for the Student's 2012-2013 school year. (Tr. 15.) The Parent attended the CSE by phone, as did Ms. Bindia Shah, the Student's special education teacher at Cooke. (Tr. 108, 123, 210.) The CSE reviewed the Student's progress reports prepared by Cooke, and did not otherwise prepare independent evaluations of the Student. (Tr. 25-26, 51-52.) The CSE also relied on Cooke's assessment of the Student's management needs—including prompts, redirection and small group instruction—and adopted them in their entirety. (Tr. 30-33.) And with only slight variations, the IEP adopted by the CSE utilized the goals for the Student that were developed for him by the Cooke staff. (Tr. 35-43, 59-60, 109.)

The IEP recommended that the Student be placed in a District 75 school program with a student-teacher-paraprofessional ratio of 12:1:1. (Tr. 14-15.) In addition, the IEP provided that the Student receive "individual occupation[al] therapy once per week; group occupational therapy once per week; individual speech and language therapy twice per week, group speech and language therapy once per week; individual counseling once per week; and

---

[1] Citations to "(Tr. __.)" refer to the transcript of the hearing held before IHO Barbara J. Ebenstein on September 27, 2012, November 19, 2012, and December 10, 2012.

group counseling in a group of two once per week."  (IHO Decision, at 4 (citing Ex. 1).)  On

June 29, 2012, the Department sent a Final Notice of Recommendation (the "FNR") to the Parent

recommending placement of the Student in P.S. 186.  (Tr. 15.)

       Upon receiving the FNR, the Parent went to P.S. 186 with Ms. Cindi Surdi, a staff

member of Cooke.  (Tr. 87-88, 288.)  The Parent and Ms. Surdi met with the principal of P.S.

186, Ms. Ava Kaplan.  (Tr. 88, 211-12.)  Ms. Surdi testified that Principal Kaplan reviewed the

Student's IEP and stated that the "school is not appropriate for [the Student]," and that while she

"could possibly take him . . . this is really more about [the Student] and she didn't think he'd be a

good fit because he does not present with any behavioral issues whatsoever."  (Tr. 88.)  Ms.

Surdi added that Principal Kaplan then ended the meeting, and neither the Parent nor Ms. Surdi

were given an opportunity to tour the school or look at the classrooms.  (Tr. 88-90.)  The Parent

testified to a similar exchange with Principal Kaplan, noting that upon reviewing the Student's

IEP, she stated that P.S. 186 "would not be a good placement for [the Student]."  (Tr. 212.)

       Sometime after visiting P.S. 186, the Parent wrote to the Department, rejecting the

Student's placement in P.S. 186 as "inappropriate."  (IHO Decision, Ex. 3 at 2.)  She requested

that the Department continue to pay for the Student's tuition at Cooke.  (Id.)  On July 20, 2012,

Bronx Legal Services sent a formal notice to the Department on behalf of the Parent notifying

them that the Parent was rejecting the Department's placement of the Student in P.S. 186.  (Id. at

1.)  The letter stated that the Parent would continue "the [Student's] unilateral placement" at

Cooke.  (Id.)

       On September 26, 2012, the Parent filed a complaint with the Department and

requested a hearing before an IHO.  (Id. at Ex. A.)  The Parent claimed that the Student's IEP

was substantively and procedurally deficient, and that the Department recommended an

inappropriate placement for the Student for the 2012-2013 school year.  (Id.)  The Parent sought

an interim order of pendency to allow the Student to remain at Cooke during the course of the

hearing, and for the Department to pay the Student's tuition and related costs for the 2012-2013

school year.[2]  (Id.)

        At the due process hearing, the IHO (Barbara J. Ebenstein) heard testimony from

several witnesses, including the Parent and representatives from Cooke.  (Id. at 2.)  The IHO

issued a written decision concluding that the Parent was entitled to reimbursement of the

Student's tuition at Cooke for the 2012-2013 school year.  (Id. at 17.)  The IHO found that the

IEP developed for the Student was "procedurally and substantively appropriate for him."  But

she concluded that "the [Department] did not establish that the offered school site could

implement the IEP."  (Id. at 9-11.)  The IHO then determined that Cooke was an appropriate

school for the Student for the 2012-2013 academic year, and that equitable considerations

weighed in favor of the Parent.  (Id. at 12-17.)  The IHO ordered the Department "to pay

reimbursement upon proper receipt of documentation."  (Id. at 17.)

        Notably, this case did not turn on evidence that the placement was not appropriate

but rather on the Department's failure to prove that it was appropriate.  Indeed, the IHO was

careful to note that the Parent "only offered a few hearsay opinion statements that the offered

school site is not appropriate for [the Student] as children there have behavioral issues and have

disabilities classified as 'emotional disturbance' (ED)."  (IHO Decision, at 11.)  The IHO added,

"[t]hat does not mean that the IEP could not be properly implemented in the school."  (Id.)  The

IHO concluded that on the record before her it would be speculative to conclude that the school

placement was or was not appropriate:

---

[2] With no objection from the Department, IHO James McKeever, Esq., granted an order of pendency on October 9, 2012.

> Neither party in this impartial hearing provided any evidence or testimony
> to establish that the offered school site does, or does not, conform to the
> program offered in the IEP.  Making a determination on whether the offered
> school site can implement the . . . IEP would require me to speculate, and I
> will not do that.

(Id.)  The IHO then ruled in favor of the parent, because the Department "did not carry its burden to establish that the IEP could be implemented at the school site."  (Id.)

The Department appealed the IHO's decision to the SRO, arguing that the IHO exceeded the scope of the hearing by considering issues beyond the scope of the Parent's written complaint.  (Pet'r Br. to SRO, at 7-8.)  The SRO (Carol H. Hauge) reversed the IHO's ruling and concluded that she had "exceeded the scope of the impartial hearing by addressing the question of the assigned school's ability to implement the IEP because the Parent did not raise the issue in her due process complaint notice."  (SRO Decision, at 5-9.)  On this basis, the SRO determined that the Parent's claim was waived.  (Id. at 6.)  The SRO also concluded that even if the claim had not been waived, the Department was not required to prove that the proposed placement school could implement the Student's IEP.  (Id.)

The Parent commenced this action seeking a judgment declaring that the Department failed to offer the Student a FAPE, that Cooke was an appropriate placement, and that equitable considerations weigh in favor of reimbursing the Parent.  (Id.)  As noted, each side has moved for summary judgment.  (Dkt. No. 16, 19.)  In the present proceeding, neither side challenges the substantive or procedural adequacy of the Student's IEP.

STANDARD OF REVIEW

Summary judgment in the context of the IDEA "involves more than looking into disputed issues of fact; rather, it is a 'pragmatic procedural mechanism' for reviewing administrative decisions."  T.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 252 (2d Cir. 2009) (quoting Lillbask v. Conn. Dep't of Educ., 397 F.3d 77, 83 n. 3 (2d Cir. 2005)).

"'The district court must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence.'" Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist., 773 F.3d 372, 385-86 (2d Cir. 2014) (quoting Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 191-92 (2d Cir. 2005)).  However, review of "'state educational decisions under the IDEA is circumscribed.'" R.E., 694 F.3d at 189 (quoting Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112-13 (2d Cir. 2007).  Courts must bear in mind "'the statutory context and administrative judges' greater institutional competence in matters of educational policy.'" Hardison, 773 F.3d at 386 (quoting R.E., 694 F.3d at 189).  Accordingly, due weight should be given to state proceedings, considering that "the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" M.H. v. New York City Dep't of Educ., 685 F.3d 217, 240 (2d Cir. 2012) (quoting Gagliardo, 489 F.3d at 13).

DISCUSSION

Courts have long recognized that the IDEA "allows parents to reject an IEP they feel is inadequate, place their child in an appropriate private school, and seek tuition reimbursement from the school district." R.E., 694 F.3d at 186 (citing Sch. Comm. of Town of Burlington v. Dep't of Educ., 471 U.S. 359, 369-70 (1985)).  To determine whether parents are entitled to tuition reimbursement, courts rely on the Burlington/Carter framework.  At the first step, "the local school board bears the initial burden of establishing the validity of its plan." M.O. v. New York City Dep't of Educ., 793 F.3d 236, 243 (2d Cir. 2015) (quoting R.E., 694 F.3d at 186).  If the Department fails to carry this burden, "the parents bear the burden of establishing the appropriateness of their private placement and that the equities favor them." Id.

The crux of the appeal centers on the first step of the Burlington/Carter framework.  While the Parent does not contest the validity of the Student's IEP, she argues that

the particular school in which the Department proposed to place the Student was incapable of

implementing the IEP.  The Court must first decide whether the Parent's complaint gave the

Department fair notice of the Parent's objection to the proposed placement and, second, whether

the nature of the objection was legally cognizable under existing law.  If the Parent did raise a

legally cognizable objection in the complaint, then there is no serious dispute that the

Department offered no evidence to support the propriety of the placement, a matter on which it

would bear the burden of proof.

I.      The IDEA's Notice Requirement

        The SRO concluded that the IHO "exceeded the scope of the impartial hearing by

addressing the question of the assigned school's ability to implement the IEP because the Parent

did not raise the issue in her due process complaint notice."  (SRO Decision, at 5.)  Although a

court should generally defer to the decision of the SRO, "the 'due weight' [courts] ordinarily

must give to the state administrative proceedings is not implicated with respect to . . . the proper

interpretation of the federal statute and its requirements."  Mrs. B. v. Milford Bd. of Educ., 103

F.3d 1114, 1122 (2d Cir. 1997).  The SRO's ruling regarding notice is not one that warrants

deference.  It is not based on a detailed understanding of educational policy or an extensive

review of the evidence and witness testimony presented during agency review.  M.H., 685 F.3d

at 244.  Determining whether notice was given can be determined by a plain reading of the

complaint, 20 U.S.C. § 1415(f)(3)(B), and the district court is in just as good a position as the

administrative agency to make such a determination.

        The New York State Commissioner of Education's implementing regulation

requires a parent's complaint to include "a description of the nature of the problem of the student

relating to such proposed or refused initiation or change, including facts relating to such

problem."  N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i)(1)(IV); see 20 U.S.C. §

1415(b)(7)(A)(ii)(III).  The notice requirement provides the Department with an opportunity to resolve the parents' issues without resorting to litigation. 20 U.S.C. § 1415(f)(1)(B).  It prevents "parents from 'sandbag[ging] the school district' by raising claims after the expiration of the resolution period."  C.F., 746 F.3d at 78 (quoting R.E., 694 F.3d at 187 n.4) (alteration in original)).  Reading a complaint over-broadly also hinders the district's ability to prepare for a hearing and may expand the district's burden of proof improperly.  While there is some room for latitude, the issues at the hearing are generally confined to the "problem" raised in the complaint. A.S. v. New York City Dep't of Educ., 573 Fed. App'x 63, 65 (2d Cir. 2014) ("'[T]he waiver rule is not to be mechanically applied.'" (quoting C.F., 746 F.3d at 78)).  Courts routinely limit a parent's challenge to the adequacy of a student's IEP, for example, to the problems raised in the parent's complaint.  See, e.g., J.C.S. v. Blind Brook-Rye Union Free Sch. Dist., No. 12 cv 2896, 2013 WL 3975942, at *9 (S.D.N.Y. Aug. 5, 2013); Dirocco ex rel. M.D. v. Bd. of Educ. of Beacon City Sch. Dist., No. 11 cv 3897, 2013 WL 25959, at *23 (S.D.N.Y. Jan. 2, 2013); B.P. v. New York City Dep't of Educ., 841 F. Supp. 2d 605, 611 (E.D.N.Y. 2012).

    Here, the Parent's due process complaint, drafted by her attorney, raised a single challenge to the proposed placement: that the Department placed the Student "in a school and classroom with very active and behaviorally involved children," and, therefore, the Student "would have great difficulty focusing in a setting of this kind."  (IHO Decision, Ex. A at 2(c)(i).) No claim was made that the school does not have a 12:1:1 program available or that it would be unable to provide the related services prescribed by the IEP.  No claim was made that the class would not have been appropriate for the Student's age or cognitive level.  The Court concludes that the Parent did, indeed, raise in the complaint a challenge to the school placement; it was a narrow challenge based upon the perception that the other students in the class were "very active

and behaviorally involved children."  The Court will now consider whether the challenge is legally cognizable.

II.      The Parent's Challenge to the Proposed Placement School

        The extent to which a parent may prospectively challenge a school placement is informed by two recent Second Circuit decisions.  In R.E. v. New York City Dep't of Educ., the Court concluded that the Department "may select the specific school without the advice of the parents so long as it conforms to the program offered in the IEP.  694 F.3d at 191-92 (citations and footnotes omitted).  There, parents refused the Department's proposed placement and instead enrolled their child in a private school.  They challenged the school site's ability to deliver IEP-mandated services because the district's own documents showed that students at the site were "underserved."  The Court rejected the challenge, holding that the court's "evaluation must focus on the written plan offered to the parents."  Id. at 195.  "Speculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement."  Id. (emphasis added).

        Subsequently, the Second Circuit clarified that "R.E. does not foreclose all prospective challenges to a child's proposed placement school.  M.O., 793 F.3d at 244.  Rather, M.O. held that "challenges to a school district's proposed placement school must be evaluated prospectively (i.e., at 'the time of the parents' placement decision') and cannot be based on mere speculation."  Id.  Notably, in M.O. the Court concluded that an express challenge to a particular school site that was more appropriately viewed as a challenge to the IEP did not trigger the obligation of the district to prove the adequacy of the proposed placement school:

        [A]lthough M.O. testified that she visited P.S. 159 and found that the placement was inappropriate, her assertion was based on her own belief that 'if [D.O.] was put in there[,] he would shut down completely,' rather than on P.S. 159's lack of IEP-mandated services.  This challenge too relates to the substantive adequacy of D.O.'s IEP, which must be assessed by

reference to the written plan itself, and did not trigger a duty on the part of
the school district to provide evidence regarding P.S. 159's adequacy.

M.O., 793 F.3d at 245 (internal citations omitted).  The above-quoted passage from M.O. is

instructive in the case at hand in two respects.  First, the claim in M.O. that "'if [D.O.] was put in

there[,] he would shut down completely'" was non-cognizable, and is of the kind and character

of this Parent's challenge that Student "would have great difficulty focusing in a setting . . . with

very active and behaviorally involved children."  (IHO Decision, Ex. A at 2(c)(i).)  Second, a

parent's challenge to a placement at a school site that is of the type that is not legally cognizable

imposes no burden on the school district to prove that the proposed site is appropriate.

        In summary, to challenge the placement of a student in a particular school, the

parent's complaint must contain "a description of the nature of the problem . . . , including facts

relating to such problem."  N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i)(1)(IV); 20 U.S.C. §

1415(b)(7)(A)(ii)(III).  To be a cognizable claim, i.e., one that triggers the school district's

burden of proof, the "problem" with the placement cannot be a disguised attack on the IEP; in

other words, if the student ought to be placed in a school with particular characteristics,

programs or services, then they should be set forth in the IEP and may not be raised as a

challenge to the school placement.  See M.O., 793 F.3d at 245.  A cognizable claim must also be

non-speculative, meaning that a claim that a particular school is unable to offer a program or

service must be based on facts and not conjecture concerning future events.  R.E., 694 F.3d at

191-92.  If a cognizable claim is raised, then the school district bears the burden of proof with

regard to the "problem" alleged in the complaint, but not other aspects of the placement.  M.O.,

793 F.3d at 245.

        In the present case, the SRO's decision—handed down after R.E. but before

M.O.—rejected the Parent's challenge as prospective and barred by R.E.  (SRO Decision at 6.)

The Court must now decide whether the specific objection to the school placement was of the kind foreclosed by <u>R.E.</u> and <u>M.O.</u>

   The Parent contends that the placement is inappropriate because the Student would have difficulty focusing in a classroom "with very active and behaviorally involved children." (IHO Decision, Ex. A at 2(c)(i).) The IEP enumerates the particular type of environment that the Student requires to ensure meaningful progress. The IEP requires, for example, that the Student be placed in a 12:1:1 classroom, and have individual and group therapies and counseling. Rather than challenging the particular school's ability to provide these services, the Parent effectively seeks to rewrite the IEP to include a requirement that the Student be placed in a classroom without "very active and behaviorally involved children." If the Parent believed that a particular type of environment was necessary to enable the Student to make meaningful progress, then she was required to raise it in her complaint as a challenge to the IEP.

   The Parent's challenge fails for the independent reason that it is "speculati[ve]" and therefore imposes no burden of proof on the Department. Just as it was "speculati[ve]" to argue that the student would be "underserved" if he were to attend the proposed placement school in <u>R.E.</u>, so too is it "speculati[ve]" to argue that the Student would be in class with unsuitable classmates. As the IHO pointed out, students "are grouped according to their needs rather than according to the classification of their disability." (IHO Decision, at 11.) Whether or not the Student is grouped in a class that is inappropriate for his IEP cannot be known at the time of the parent's placement decision. See <u>F.L. v. New York City Dep't of Educ.</u>, No. 11 cv 5131, 2012 WL 4891748, at *14 (S.D.N.Y. Oct. 16, 2012) ("[P]arents cannot rely on observations of a particular teacher or classroom because there is no guarantee that [the student] would have been placed in the classroom visited by [the parent]."), <u>aff'd</u>, 553 Fed. App'x 2 (2d Cir. 2014).

The Parent argues that her challenge is not "speculati[ve]" because it is "based on [her] direct observation during her visit to the school and more importantly upon her conversation with the school's principal, Ava Kaplan." (Pl.'s Reply 5.) However, a parent's conclusions based on personal belief have frequently been rejected as insufficient to justify unilateral placement. M.O., 793 F.3d at 245. The Parent's reliance on statements by Principal Kaplan, who allegedly advised her that the proposed placement school was not an appropriate placement based on her review of the Student's IEP, is also unavailing. The IHO found that the Parent's meeting with Principal Kaplan was not reliable, because it was unclear whether Principal Kaplan saw the Student's current IEP. Because the SRO did not opine on this issue, and because the IHO is in the best position to judge credibility of witnesses, the Court will not replace the IHO's factual findings on this point with its own. B.P., -- Fed. App'x --, 2015 WL 9487873, at *3 (citing M.H., 685 F.3d at 258).

CONCLUSION

For the foregoing reasons, the Department's cross-motion for summary judgment (Dkt. No. 19) is GRANTED, and the Parent's motion for summary judgment (Dkt. No. 16) is DENIED. The Clerk is directed to enter final judgment for the defendant and close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       February 11, 2016